UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARY GEORGE GROSSNICKLE,

        Petitioner,

                                        CASE NO. 2:08-CV-11820
v.                               JUDGE DAVID M. LAWSON
                                 MAGISTRATE JUDGE PAUL J. KOMIVES

SHERRY BURT,

        Respondent.

_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.   *Mootness* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      C.   *Merits of Petitioner's Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          2.   *Blakely (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          3.   *Ineffective Assistance of Counsel (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . . 17
             a.  Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
             b.  Trial Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
             c.  Appellate Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          4.   *Double Jeopardy (Claims IV & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
             a.  Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
             b.  Failure to Credit Residential Treatment Time . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
             c.  Serving Second Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
      D.   *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
      E.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

\*      \*      \*      \*      \*

I.     RECOMMENDATION: The Court should conclude that petitioner's application for the writ

of habeas corpus is moot, and should dismiss the petition for lack of jurisdiction. Alternatively the

Court should deny the petition on the merits. In either event, the Court should also deny petitioner

a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

1.    Petitioner Gary George Grossnickle is a former state prisoner. At the time he filed this habeas action, petitioner was on parole from his imprisonment. Since the filing of his petition, he has been discharged.

2.    On December 2, 2003, petitioner was convicted of operating a vehicle under the influence of liquor (OUIL), third offense, MICH. COMP. LAWS § 257.625, pursuant to his guilty plea in the Bay County Circuit Court. On June 21, 2004, he was sentenced to a term of 5 years' probation, with the first 9 months to be served in the county jail.

3.    Petitioner pleaded guilty to violating his probation on March 3, 2005. He was sentenced to 30 days in the county jail and continuation of his probation, with an additional requirement that he complete an in-patient substance abuse program.

4.    On August 12, 2005, petitioner again pleaded guilty to violating his probation. His probation was revoked and he was sentenced to a term of 40-60 months' imprisonment.

5.    Petitioner, through counsel, filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

   I.    THE TRIAL COURT COMMITTED ERROR BY IMPOSING A SENTENCE OF 40 TO 60 MONTHS IMPRISONMENT UPON DEFENDANT WHERE THE STATUTORY SENTENCE CALLS FOR 1 TO 5 YEARS IMPRISONMENT AND THE APPLICABLE SENTENCING GUIDELINES CALLS FOR A MINIMUM SENTENCE OF 0 TO 9 MONTHS.

   II.   THIS COURT SHOULD REMAND THIS CASE FOR RESENTENCING BEFORE A DIFFERENT TRIAL JUDGE IF IT IS DETERMINED THAT THE TRIAL COURT DID COMMIT ERROR BY IMPOSING A 40 TO 60 MONTH TERM OF IMPRISONMENT UPON DEFENDANT.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack

of merit in the grounds presented." *See People v. Grossnickle*, No. 269952 (Mich. Ct. App. May 26, 2006) (per curiam).

6.     Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Grossnickle*, 477 Mich. 870, 721 N.W.2d 211 (2006).

7.     On January 24, 2007, petitioner, through counsel, filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.     THE DEPARTURE SENTENCE IMPOSED BY JUDGE BIELAWSKI– TO THE *TANNER* MAXIMUM – WAS UNLAWFUL.  DEFENDANT-APPELLANT'S TRIAL COURT AND APPELLATE COUNSEL COMPLETELY FAILED TO DEFEND AGAINST THE SENTENCE IMPOSED THUS DEPRIVING DEFENDANT-APPELLANT OF THE PROTECTIONS OF THE ADVERSARY SYSTEM.  THE COMPLETE ABSENCE OF COUNSEL INFECTED THE PROCEEDING AND RESULTING JUDGMENT WITH STRUCTURAL ERROR REQUIRING RELIEF.  GOOD CAUSE IS SHOWN FOR THE FAILURE TO RAISE THIS ISSUE PREVIOUSLY, AND DEFENDANT-APPELLANT CONTINUES TO SUFFER ACTUAL PREJUDICE FROM THAT FAILURE.

II.    DEFENDANT-APPELLLANT'S COUNSEL AT SENTENCING FAILED TO CHALLENGE JUDGE BIELAWSKI'S DEPARTURE SENTENCE BY REFERENCE TO *BLAKELY V. WASHINGTON*, 524 U.S. 296 (2004).  CURRENT LITIGATION IN THE MICHIGAN SUPREME COURT SHOWS THAT THE QUESTION WHETHER *BLAKELY* APPLIES TO DEPARTURES FROM INTERMEDIATE SANCTION CELLS UNDER MICHIGAN'S LEGISLATIVE SENTENCING GUIDELINES HAS NOT BEEN RESOLVED.  GOOD CAUSE IS SHOWN FOR THE FAILURE TO RAISE THE ISSUE, AND DEFENDANT-APPELLANT CONTINUES TO SUFFER ACTUAL PREJUDICE AS A RESULT.

III.   DEFENDANT-APPELLANT'S COUNSEL AT SENTENCING FAILED TO CHALLENGE JUDGE BIELAWSKI'S REFUSAL TO GRANT TO DEFENDANT-APPELLANT JAIL CREDIT AGAINST HIS SENTENCE FOR TIME THAT HE SERVED IN THE DOT RESIDENTIAL TREATMENT PROGRAM. DEFENDANT-APPELLANT WAS CONFINED IN THE DOT PROGRAM AS A SANCTION FOR A PRIOR PROBATION VIOLATION.  GOOD CAUSE IS SHOWN FOR THE FAILURE TO RAISE THE ISSUE, AND DEFENDANT SUFFERS ACTUAL PREJUDICE AS A

RESULT.

IV. DEFENDANT-APPELLANT'S COUNSEL AT THE TIME OF HIS GUILTY PLEA TO PROBATION VIOLATION ADVISED DEFENDANT-APPELLANT THAT HE HAD TO PLEAD GUILTY, THAT HE WAS WITHOUT DEFENSES, AND THAT ONLY BY THROWING HIMSELF ON THE MERCY OF THE COURT COULD HE AVOID A LENGTHY PRISON TERM. BY THESE REPRESENTATIONS COUNSEL, WHO UNDERTOOK NO EFFORT TO DEFEND THE CHARGES OR TO OPPOSE OR MINIMIZE THE SENTENCE COERCED DEFENDANT-APPELLANT TO PLEAD, RENDERING HIS PLEA NEITHER VOLUNTARY OR INTELLIGENT. GOOD CAUSE IS SHOWN FOR FAILURE TO RAISE THE VALIDITY OF DEFENDANT-APPELLANT'S GUILTY PLEA, AND DEFENDANT-APPELLANT CONTINUES TO SUFFER ACTUAL PREJUDICE AS A RESULT.

On March 20, 2007, the trial court denied petitioner's motion for relief from judgment. The Michigan Court of Appeals denied petitioner's applications for leave to appeal raising these claims in a standard order, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Grossnickle*, No. 277290 (Mich. Ct. App. Nov. 29, 2007).

8. Petitioner filed a *pro se* application for leave to appeal in the Michigan Supreme Court, raising the following claims:

I. THE LOWER COURTS' DECISIONS IN THIS CASE ARE CONTRARY TO CLEARLY ESTABLISHED LAW AS DETERMINED BY THE UNITED STATES SUPREME COURT IN APPRENDI V. NEW JERSEY, 530 US 466 (2000), AND ITS PROGENY.

II. THE LOWER COURTS' DECISIONS ARE CONTRARY TO, AND/OR CONSTITUTED AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, AS DETERMINED BY THE UNITED STATES SUPREME COURT IN STRICKLAND V. WASHINGTON, 466 US 668 (1984) AND HILL V. LOCKHART, 474 US 52 (1985).

III. THE DEPARTURE SENTENCE IMPOSED BY THE TRIAL COURT IS UNLAWFUL IN TERMS OF BOTH THE SUFFICIENCY OF THE REASONS GIVEN AND THE EXTENT OF THE DEPARTURE.

IV. THE LOWER COURTS' DECISIONS IN THIS CASE ARE CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY

THE UNITED STATES SUPREME COURT IN NORTH CAROLINA V. PEARCE, 395 US 711 (1969), AND DEFENDANT HAS BEEN SENTENCED IN EXCESS OF THAT ALLOWED BY LAW AS SUCH.

The Michigan Supreme Court denied petitioner's application for leave to appeal in a standard order, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Grossnickle*, 480 Mich. 954, 741 N.W.2d 324 (2007).

9.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 29, 2008. As grounds for the writ of habeas corpus, he raises the following claims: (1) improper sentencing under *Blakely*; (2) ineffective assistance of trial counsel at plea and sentencing; (3) ineffective assistance of appellate counsel; (4) double jeopardy violation for failure to provide jail credit.

10.     Respondent filed her answer on December 5, 2008. She contends that petitioner's claims are barred by his procedural default in the state courts.

B.      *Mootness*

As an initial matter, the court lacks jurisdiction over petitioner's habeas application because of petitioner's release from prison. In order to attack a conviction through habeas corpus, a petitioner must be "in custody" pursuant to that conviction at the time the habeas application is filed. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are '*in custody* in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis supplied by Court); *see also*, 28 U.S.C. § 2254(a). This requires "that the habeas petitioner be 'in custody' *under the conviction or sentence under attack* at the time his petition is filed." *Maleng*, 490 U.S. at 490; *see also, Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). Where, as here, a petitioner is released during the pendency of his petition, a court is

not divested of jurisdiction so long as the petitioner was "in custody" at the time the petition was filed. *See Carafas*, 391 U.S. at 238; *York v. Tate*, 858 F.2d 322, 324 (6th Cir. 1988).

Nevertheless, a prisoner's release may moot his habeas petition. Under Article III of the Constitution, a federal court has jurisdiction only over actual "cases or controversies." U.S. CONST. art. III, § 2. As the Supreme Court has explained:

> "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. . . . The parties must continue to have a 'personal stake in the outcome' of the lawsuit. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-478 (1990). See also *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis, supra*, at 477.

*See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (alternation in original). In other words, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). Thus, a case is moot and outside the Court's jurisdiction if "events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986). Mootness is a jurisdictional issue which may be raised by the Court *sua sponte*. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971).

Where, as here, the petitioner is no longer in custody, his habeas petition will be moot unless he shows some "concrete and continuing injury other than the now-ended incarceration," that is, some "'collateral consequence" of the detention. *Spencer*, 523 U.S. at 7. Ordinarily, a habeas petition challenging a criminal conviction will not be moot, because the criminal conviction almost always carries continuing collateral consequences. However, where a petitioner has been fully discharged from the sentence that he challenges, and the petitioner challenges only the sentence imposed but not the underlying conviction, there are no continuing collateral consequences that could be redressed by

a favorable disposition of his habeas application.  *See Lane v. Williams*, 455 U.S. 624, 631 (1982); *Castro v. Keith*, 132 Fed. Appx. 766, 768 (10th Cir. 2005).

This is the case here.  The Michigan Department of Corrections's Offender Tracking Information System (OTIS) website indicates that petitioner has been fully discharged from his sentences.  And petitioner's claims challenge only the sentence imposed as a result of his violation of probation.  In his first claim, petitioner contends that the sentence imposed violated the rule of *Apprendi v. New Jersey* and *Blakely v. Washington*.  In his second claim, petitioner contends that his trial counsel was ineffective for failing to seek a plea agreement with a shorter sentence and for failing to raise various challenges to the sentence imposed by the trial court.  In his third claim, he contends that appellate counsel was ineffective for failing to raise those same sentencing claims.  And in his fourth and fifth claims, petitioner challenges the trial court's failure to grant credit against his sentence for time spent in a residential treatment facility.  Because each of petitioner's claims challenges only the sentence imposed by the trial court, and because petitioner has been fully discharged from that sentence, the claims are now moot.  Accordingly, the Court should dismiss the petition for lack of jurisdiction.

C.      *Merits of Petitioner's Claims*

Alternatively, if the Court rejects my conclusion that petitioner's application is moot, the Court should deny petitioner's claims on the merits.

1.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by

providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether

the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[1]

---

[1]Respondent argues that petitioner's claims are procedurally defaulted by his failure to raise the claims on direct appeal, because the Michigan Court of Appeals and the Michigan Supreme Court both rejected petitioner's appeal based on his "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." The Sixth Circuit has conflicting decisions regarding the sufficiency of this language to invoke the procedural bar in Rule 6.508(D)(3) and constitute a procedural default in federal court. *Compare Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) (language alone sufficient to constitute invocation of procedural bar), *with Abela v. Martin*, 380 F.3d 915, 923-24 (6th Cir. 2004) (language insufficient where lower court opinion rejected claims on the merits). The Sixth Circuit has recently granted rehearing *en banc* to resolve this issue. *See Guilmette v. Howes*, No. 08-2256 (6th Cir. Mar. 12, 2010). While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural

2. _Blakely_ (Claim I)

Petitioner first contends that his sentence violates the rule of _Blakely v. Washington_, 542 U.S. 296 (2004) and _Apprendi v. New Jersey_, 530 U.S. 466 (2000). In _Apprendi_, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." _Apprendi_, 530 U.S. at 490. In _Blakely_, the Court considered the applicability of _Apprendi_ to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines. The state in that case argued that guidelines findings were not prohibited by _Apprendi_ because _Apprendi_ prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed. The Court in _Blakely_ rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for _Apprendi_ purposes is the maximum sentence a judge may impose _solely on the basis of the facts reflected in the jury verdict or admitted by the defendant._ In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose _without_ any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

---

default doctrine is not jurisdictional. _See Trest v. Cain_, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." _Barrett v. Acevedo_, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); _see also_, _Lambrix v. Singletary_, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); _Walter v. Maass_, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). In light of the Sixth Circuit's conflicting decisions and recent decision to consider the issue _en banc_, and in light of the fact that petitioner's substantive claims for relief are without merit, the Court should proceed to the merits of petitioner's claims. _See Roush v. Burt_, 313 Fed. Appx. 754, 757-58 (6th Cir. 2008) (noting the Sixth Circuit's conflicting decisions and the rule that procedural default is not jurisdictional, and concluding "because we affirm the district court's decision on the merits, we leave issues regarding procedural default and the generic use of MCR 6.508(D) for another day.").

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines and departed upward from his guidelines, his sentence violates *Blakely* and *Apprendi*. However, Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH.

COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the CSC-I charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris v.*

*United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime–and thus the domain of the jury–by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in *Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes involving judicial factfinding entail less judicial discretion than indeterminate schemes, the constitutionality of the latter implies the constitutionality of the former. This argument is flawed on a number of levels. First, the Sixth Amendment by its terms is not a limitation on judicial power, but a reservation of jury power. It limits judicial power only to the extent that the claimed judicial power infringes on the province of the jury. Indeterminate sentencing does not do so. It increases judicial discretion, to be sure, but not at the expense of the jury's traditional function of finding the facts essential to lawful imposition of the penalty. Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal *right* to a lesser sentence–and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme, under which the maximum is established by statute and only the minimum term is based on judicial factfinding, does not violate the Sixth Amendment. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan,* 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich.

at 730 n.14, 684 N.W.2d at 286 n.14.

Nor is this conclusion altered by the fact that petitioner was originally sentenced to a term of probation, and only subsequently sentenced to a term of imprisonment authorized by the statute of conviction. Under Michigan's "intermediate sanction cells,"

> [w]hen the upper and lower limits of the recommended minimum sentence range meet certain criteria, a defendant is eligible for an intermediate sanction. If the upper limit of the sentence range exceeds 18 months and the lower limit is 12 months or less, the defendant's range is in a "straddle cell." When the range is in a straddle cell, the sentencing court may elect either to sentence the defendant to a prison term with the minimum portion of the indeterminate sentence within the guidelines range or to impose an intermediate sanction, absent a departure. If the upper limit of the minimum sentence range is 18 months or less . . . the cell containing the range is an "intermediate sanction cell." Under these circumstances, the statue provides that
>> the court shall impose an intermediate sanction unless the court states on the record a substantial and compelling reason to sentence the individual to the jurisdiction of the department of corrections. An intermediate sanction may include a jail term that does not exceed the upper limit of the recommended minimum sentence range or 12 months, whichever is less.

*People v. Harper*, 479 Mich. 599, 617, 739 N.W.2d 523, 534 (2007) (quoting MICH. COMP. LAWS § 769.34(4)(a)) (citations and footnotes omitted). Under the statute, an "intermediate sanction" is "probation or any other sanction, other than imprisonment in a state prison or reformatory," such as probation, substance abuse treatment, house arrest, or community service. MICH. COMP. LAWS § 769.31(b). Here, petitioner's guidelines, at the time of his original plea to the OUIL offense, provided a range of 0-9 months' imprisonment on the minimum sentence. Petitioner argues, as did the defendants in *Harper*, that "because the statute states that the sentencing court 'shall' impose an intermediate sanction, [he was] constitutionally entitled under *Blakely* to either a jail term of 12 months or less or one or more of the other intermediate sanction options available to the sentencing court." *Harper*, 479 Mich. at 618-19, 739 N.W.2d at 535. This argument fails, for two reasons.

First, the intermediate sanction scheme in § 769.34(4)(a) does not render *Blakely* applicable

14

to the Michigan sentencing guidelines where it otherwise is not applicable. Where a defendant is convicted, he is subject to the maximum term of imprisonment authorized by the statute of conviction without any additional factfinding. Rather, additional factfinding may entitle a defendant to a *lesser* sentence under § 769.34(4)(a). A defendant's entitlement to sentencing under an intermediate sanction cell arises only after the trial court has scored the sentencing guidelines; without that scoring, the offense of conviction authorizes the court to impose the maximum sentence allowed by law. *See Harper*, 479 Mich. at 621-25, 739 N.W.2d at 536-38. In other words,

> Michigan's unique law requiring the imposition of an intermediate sanction upon fulfillment of the conditions of MCL 769.34(4)(a) does not alter the maximum sentence that is required upon conviction and authorized by either the jury verdict or the guilty plea. Rather, the conditional limit on incarceration contained in MCL 769.34(4)(a) is a matter of legislative leniency, giving a defendant the opportunity to be incarcerated for a period that is *less* than that authorized by the jury verdict or the guilty plea, a circumstance that does not implicate *Blakely*.

*Harper*, 479 Mich. at 603-04, 739 N.W2d at 526-27 (footnotes omitted). Thus, the analysis under *Blakely* is no different with respect to intermediate sanction cell sentences that it is with respect to the Michigan sentencing guidelines as a whole, and *Blakely* is not implicated here.

Second, even if *Blakely* were otherwise applicable to the intermediate sanction cell sentence, petitioner cannot show that his sentence violated *Blakely* because he was, in fact, sentenced to an intermediate sanction of probation. It was only after petitioner repeatedly violated his probation that he was sentenced to a term of imprisonment. Under Michigan law, when a defendant violates the terms of his probation the court may revoke the defendant's probation and sentence the defendant "in the same manner and to the same penalty as the court might have done if the probation order had never been made." MICH. COMP. LAWS § 771.4. In a probation revocation proceeding, a defendant does not have the full panoply of constitutional rights, and specifically probation revocation hearings are "proceedings in which the trial rights of a jury and proof beyond a reasonable doubt, among other

things, do not apply." *Samson v. California*, 547 U.S. 843, 850 (2006). By law, the court was authorized to impose the maximum penalty for the underlying offense of conviction upon revoking petitioner's probation, and petitioner had no right to a jury trial to determine any facts, much less those that might influence the court's choice of sentence. So long as his sentence was within the statutory maximum for the underlying offense of conviction, which it was, *Blakely* was not violated no matter what factual findings the court made or what sentence the guidelines may have provided. This is so even if, as with the United States Sentencing Guidelines, the *Blakely* rule is otherwise applicable. *See United States v. Ray*, 484 F.3d 1168, 1171-72 (9th Cir. 2007); *United States v. Cordova*, 461 F.3d 1184, 1186-87 (10th Cir. 2006); *United States v. Carlton*, 442 F.3d 802, 809-10 (2d Cir. 2006). For these reasons, the Court should conclude that petitioner is not entitled to habeas relief on his *Blakely* claim.

3.    *Ineffective Assistance of Counsel (Claims II & III)*

Petitioner next contends that he was deprived of the effective assistance of both trial and appellate counsel. Specifically, petitioner contends that trial counsel was ineffective for advising him to plead guilty to the probation violation without first securing a plea deal or sentencing agreement and in failing to challenge his sentence on various grounds. He also contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

a.    *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by

the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.

These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no

reason for a court deciding an ineffective assistance claim . . . to address both components of the

inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose

of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be

followed."  *Id.*

      With respect to the performance prong of the inquiry, a strong presumption exists that

counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689;

*O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel

is strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment."  *Id*. at 690.

      With respect to the prejudice prong, the reviewing court must determine, based on the totality

of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors,

the factfinder would have had a reasonable doubt respecting guilt."  *Id*. at 695.  Where, as here, a

petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the

'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*

*v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828.  However, with respect to the

prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going

to trial had counsel properly advised him.  As other judges of this Court have explained:

      In the guilty plea context the petitioner must show that there is a reasonable

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id.* at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

### b.  Trial Counsel

Petitioner contends that counsel was ineffective for advising him to plead guilty without first securing a plea deal or a sentencing agreement from the Court.  This argument is without merit.  With respect to counsel's failure to secure a plea deal from the prosecutor or a sentencing agreement from the court, there is absolutely no reason to believe that any such agreement would have been forthcoming.  Petitioner had no constitutional right to be offered a plea bargain by the prosecutor, and counsel cannot be faulted for failing to achieve the impossible.  Because there is no evidence that the prosecutor would have offered a deal to petitioner, he cannot show that counsel was ineffective for failing to secure such a deal.  *See United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir. 2000); *United*

*States v. Cunningham*, No. 3-97-CR-263-R, 2002 WL 1896932, at *4 (N.D. Tex. Aug. 14, 2002).

To the extent that petitioner contends counsel was ineffective for advising him to plead guilty to the probation violation, petitioner cannot show that but for counsel's advice he would have insisted on going to trial and had a reasonable probability of being acquitted. As noted above, a probation revocation hearing is not a full criminal trial, and petitioner's guilt would have been determined by the trial judge under a preponderance of the evidence standard. Petitioner was charged with four probation violations, including engaging in assaultive behavior, possessing alcohol, and possessing a firearm. Petitioner readily admitted to each of these violations at the probation violation hearing. All of the charges were supported by the report of the probation officer, who personally observed the violations and was the victim of the assaultive behavior charge. Thus, petitioner cannot show a reasonable probability that, but for counsel's advice, there is a reasonable probability that he would have insisted on going to trial and would have been acquitted at the probation revocation hearing.

Petitioner also contends that counsel was ineffective at sentencing for failing to challenge the court's departure from the sentencing guidelines, raise a *Blakely* claim, or challenge the trial court's failure to provide him credit for the time spent in a residential treatment facility as part of his probation. As explained above, petitioner's underlying *Blakely* claim is without merit, and thus counsel was not ineffective for failing to raise such a claim. As explained below, petitioner's constitutional challenge to the trial court's failure to award him credit for the time spent in a residential treatment facility is without merit, and thus counsel was not ineffective for failing to raise this meritless claim. Nor was counsel ineffective for failing to raise a claim for credit under state law. The Michigan jail credit statute provide:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense for which he is convicted, the trial court in imposing sentence

19

shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

MICH. COMP. LAWS § 769.11b. Petitioner's residence in a treatment facility does not come within this statute, for two reasons. First, petitioner's time in the facility was not served "because of being denied or unable to furnish bond;" rather, it was a condition imposed as a result of a prior probation violation. *See People v. Whiteside*, 437 Mich. 188, 196, 468 N.W.2d 504, 508 (1991) ("Defendant has not met this requirement. It cannot be said that he participated in the New Paths private drug treatment program because he was denied, or unable to furnish, bond for the offense of which he was convicted."). Nor does participation in a residential treatment program constitute time spent in "jail" under the statute, no matter how onerous the requirements and supervision of that program. *See id*. at 201-02, 468 N.W.2d at 510-11. Thus, under *Whiteside* petitioner was not entitled to credit for time spent in a residential treatment facility, and request for such credit would have been meritless.

Finally, petitioner contends that counsel was ineffective for failing to challenge the trial court's upward departure from the sentencing guidelines. Contrary to petitioner's argument, counsel provided a number of character letters to the court, *see* Sentence Tr., at 7, and argued extensively that petitioner was not a criminal but had merely "slipped off the wagon;" that petitioner's conduct was "out of character;" and that the court should give petitioner "a break" and "one more chance" to turn his life around. *See id*. at 8-13. Notwithstanding these entreaties, the court concluded that petitioner was "not suitable for supervision in this community," *id*. at 20, based on the nature of the underlying offense and the probation violations, as well as his failure to benefit from repeated residential and outpatient treatment, *see id*. at 20-24. In light of this record, petitioner has failed to show what additional argument counsel could have made that would have swayed the judge in imposing sentence. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on

his ineffective assistance of counsel at sentencing claims.

### c. Appellate Counsel

Petitioner also contends that his appellate counsel was ineffective for failing to raise his claims on direct appeal. To demonstrate prejudice resulting from appellate counsel's allegedly deficient performance, petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained throughout this Report, petitioner's underlying claims are without merit, and thus petitioner cannot show that he was prejudiced by counsel's failure to raise these claims on direct appeal.[2]

### 4. Double Jeopardy (Claims IV & V)

Finally, petitioner contends that the failure to award him credit against his sentence for the time spent in a residential treatment facility violates his right to be free from double punishment under the Double Jeopardy Clause. He also contends that his sentence of imprisonment, after he had fully served the jail term imposed as a condition of probation, violates the Double Jeopardy Clause. The

---

[2]In his third claim, petitioner also contends that the state courts' failure to find that he had established cause for his failure to raise the claims on direct appeal in order to allow them to proceed under Rule 6.508(D)(3) was contrary to *Murray v. Carrier*, 477 U.S. 478 (1986) and *Edwards v. Carpenter*, 529 U.S. 446 (2000). Because I conclude that the Court should not rely on a procedural default in addressing these claims, whether petitioner has established cause for his alleged default is irrelevant. To the extent petitioner raises the state courts' handling of his motion for relief from judgment as an independent basis for relief, the claim is not cognizable on habeas review. It is well established that nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue[.]" *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Thus, the state courts' alleged error in his postconviction proceeding does not provide a basis for habeas relief. *Murray* and *Edwards* establish standards for overcoming a procedural default in a federal habeas proceeding; they do not require a state to establish exceptions to their own procedural rules.

Court should conclude that petitioner is not entitled to habeas relief on these claims.

*a. Clearly Established Law*

The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted). "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)). Where a claim is made that a defendant is being twice punished for the same offense, the question becomes one of legislative intent. "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). If the legislature intended to impose the multiple punishments, the "court's inquiry is at an end" and there is no double jeopardy violation. *Id.* at 499 n.8. In making this determination, the Court is bound by the Michigan courts' interpretation of state law. *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

*b. Failure to Credit Residential Treatment Time*

Petitioner first claims that the trial court's failure to provide a credit against his term of imprisonment for the time spent in a residential drug treatment program constituted multiple

punishment in violation of the Double Jeopardy Clause. In support of his claim regarding the credit issue, petitioner relies on the Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711 (1969). In *Pearce*, the Court held that the Double Jeopardy Clause is violated

> when punishment already exacted for an offense is not fully "credited" in imposing sentence upon a new conviction for the same offense. The constitutional violation is flagrantly apparent in a case involving the imposition of a maximum sentence after reconviction. Suppose, for example, in a jurisdiction where the maximum allowable sentence for larceny is 10 years' imprisonment, a man succeeds in getting his larceny conviction set aside after serving three years in prison. If, upon reconviction, he is given a 10-year sentence, then, quite clearly, he will have received multiple punishments for the same offense. For he will have been compelled to serve separate prison terms of three years and 10 years, although the maximum single punishment for the offense is 10 years' imprisonment. Though not so dramatically evident, the same principle obviously holds true whenever punishment already endured is not fully subtracted from any new sentence imposed.
>        We hold that the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully "credited" in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned-by subtracting them from whatever new sentence is imposed.

*Id*. at 718-19. As the Michigan Supreme Court has observed, the principle of *Pearce* requires that time served in jail while on probation be credited against a prison sentence imposed as a result of a revocation of probation. *See People v. Sturdivant*, 412 Mich. 92, 97, 312 N.W.2d 622, 625 (1981).

Here, petitioner does not claim that he was not given credit for the time spent in jail as a condition of his original probation. Rather, he contends that because the residential treatment facility in which he resided as a condition of his probation was severely restrictive, it also should have been credited against his sentence. The Michigan Supreme Court rejected this argument in *Whiteside*, *supra*, concluding that *Pearce* was inapplicable because participation in a residential treatment program is not punishment, but is imposed for purposes of treatment and rehabilitation, and that the Michigan legislature did not intend for such credit to be given. *See Whiteside*, 437 Mich. at 202, 468

N.W.2d at 511.  This state law determination of legislative intent is binding, and thus the "court's inquiry is at an end."  *Johnson*, 467 U.S. at 499 n.8.  Importantly, petitioner has cited and I have found no cases applying the *Pearce* rule in these circumstances.  On the contrary, the courts that have considered the issue have uniformly concluded that the failure to credit time spent in a residential treatment facility as a condition of probation against a subsequent prison term imposed following the revocation of probation does not violate the Double Jeopardy Clause.  *See United States v. Verbeke*, 853 F.2d 537, 540 (7th Cir. 1988); *Maus v. State*, 532 A.2d 1066, 1076 (Md. 1987); *Whiteside*, 437 Mich. at 200-02, 468 N.W.2d at 509-11; *Ex Parte Stover*, 946 S.W.2d 343, 345 (Tex. Ct. Crim. App. 1997).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  Serving Second Sentence

Petitioner also contends that, because he fully served the original period of jail as a condition of his probation, the court could not thereafter sentence him to an alternative term of imprisonment after he violated his probation.  In support of this claim, petitioner relies on the Supreme Court's decision in *Ex Parte Lange*, 85 U.S. 163 (1874).  *Lange* provides no support for petitioner's argument.  In *Lange*, the defendant was convicted under a statute which provided for either a term of imprisonment *or* a fine of up to $200 upon conviction.  The trial court originally imposed a fine, which the defendant paid.  After he had done so, the trial court vacated the judgment and imposed a sentence of imprisonment.  In these circumstances, the Court found a double jeopardy violation because the defendant had been twice punished for a single offense.  *See id.* at 170-78.  *Lange* does not prohibit multiple punishments; rather, it prohibits only imposition of a second punishment after a first punishment has been fully served, or the imposition of two punishments where the statute provides for an alternative of only one punishment.  As the Supreme Court has subsequently clarified,

the teaching of *Lange* is that "a defendant may not receive a greater sentence that the legislature has authorized. No double jeopardy problem would have been presented in *Ex parte Lange* if Congress had provided that the offense there was punishable by both fine and imprisonment, even though that is multiple punishment." *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980).

Here, petitioner did not fully serve a sentence, only to be given a new sentence not authorized by the legislature. Rather, he was sentenced to a term of probation, one condition of which was detention in the county jail. Upon violating that probation, he was sentenced to a term of imprisonment, as expressly authorized by the Michigan legislature. The imposition of a term of imprisonment following a revocation of probation does not violate the Double Jeopardy Clause, under *Lange* or any other decision. On the contrary, as the Supreme Court has repeatedly observed, "there is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *DiFrancesco*, 449 U.S. at 137; *see also*, *Ralston v. Robinson*, 454 U.S. 201, 220 n.14 (1981) ("the imposition of confinement when an offender violates his term of probation has never been considered to raise a serious double jeopardy problem."); *United States v. Keys*, 281 Fed. Appx. 411, 412 (5th Cir. 2008) (discussing cases). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

D.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language

represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the

certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should conclude that petitioner is not entitled to a certificate of appealability. Because all of petitioner's claims are directed at his sentence, and because petitioner has been fully discharged from his sentence, it is not reasonably debatable that petitioner's claims are moot. Further, the resolution of the merits of petitioner's claims is not reasonably debatable, for the reasons explained above. In light of the language of *Apprendi*, *Blakely*, and *Harris*, and the uniform view that *Apprendi* and *Blakely* are not implicated by the Michigan sentencing guidelines, the resolution of petitioner's first claim is not reasonably debatable. Likewise, in light of the uniform case law holding that failure to give credit for time spent in a residential treatment program does not constitute a double jeopardy violation, and the Supreme Court's repeated observations that imposition of a term of imprisonment upon revocation of probation does not constitute a double jeopardy violation, the resolution of petitioner's double jeopardy claims is not reasonably debatable. Finally, because petitioner's substantive claims are without merit, the resolution of his related ineffective assistance of counsel claims is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

E. *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's claims are moot, and should accordingly dismiss the petition for lack of jurisdiction. Alternatively, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.

Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
                                        UNITED STATES MAGISTRATE JUDGE
Dated: 6/2/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on June 2, 2010.

s/Eddrey Butts
Case Manager